# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ALI ALTAWEEL,

    Plaintiff,

    v.                                                     Case No. 18-CV-1844

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

## DECISION AND ORDER

Ali Altaweel seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Altaweel filed an application for supplemental security income, alleging disability beginning on June 4, 1966. (Tr. 156.) Altaweel has Ehlers-Danlos Syndrome, an inherited disorder of the connective tissue. *See* https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125 (last visited October 3, 2019). Altaweel's application was denied initially and upon reconsideration. (Tr. 13.) Altaweel filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on August 15, 2017. (Tr. 35–59.) Altaweel testified at the hearing, as did his son Saif Altaweel, and Ray Burger, a vocational expert ("VE"). (*Id.*)

In a written decision issued October 18, 2017, the ALJ found that Altaweel had the severe impairments of Ehlers-Danlos Syndrome, degenerative disc disease, affective disorder, anxiety disorder, and post-traumatic stress disorder (PTSD), as well as a number of non-severe impairments. (Tr. 15–17.) The ALJ further found that Altaweel did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 17–19.) The ALJ found that Altaweel had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 416.967(c) with the following limitations: only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles, and exposure to unprotected heights. Additionally, the ALJ found Altaweel limited to simple, routine, and repetitive tasks with only occasional interaction with the public and co-workers. (Tr. 19–26.)

The ALJ found that considering Altaweel's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. 27.) As such, the ALJ found that Altaweel was not disabled from his alleged onset date until the date of the decision. (Tr. 27.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 1–6.)

## DISCUSSION

### 1.   *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2.    *Application to this Case*

Altaweel argues that the ALJ applied the incorrect legal standards and failed to support his decision with substantial evidence for four reasons: (1) the ALJ improperly rejected the opinions of Altaweel's treating physician and psychotherapy providers, (2) the ALJ improperly failed to consider other important evidence in the record, (3) the RFC is unsupported by substantial evidence and fails to account for the limitations established by the medical evidence, and (4) the hypotheticals presented to the VE and relied on by the ALJ did not account for Altaweel's English illiteracy. (Docket # 15.)  I will address each in turn.

### 2.1 Weight Given to Treating Provider Opinions

Altaweel argues that the ALJ improperly discounted the opinions of Altaweel's primary care physician, Dr. Eric Smiltneek, as well as two mental health care providers, Sarah Danahy and Steven Schotten. (Docket # 15 at 17–21.)

An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2).[1] If the opinion of a treating source is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the opinion is given "controlling weight." *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, he may not simply reject it. SSR 96-2p. Rather, if the ALJ finds that a treating source opinion does not meet the standard for controlling weight, he must evaluate the opinion's weight by considering a variety of factors, including the length, nature, and extent of the claimant and physician's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; and whether the doctor is a specialist. 20 C.F.R. § 404.1527(c).

The ALJ must always give good reasons for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. An ALJ can

---

[1] On January 18, 2017, the SSA published the final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence" in the Federal Register (82 FR 5844). The final rules became effective on March 27, 2017. For claims filed before March 27, 2017, however, the SSA continues to apply the prior rules. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply.").

reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

### 2.1.1 Dr. Smiltneek

The ALJ acknowledged that Altaweel's regular primary care provider, Dr. Smiltneek, provided a number of assessments between September 2014 and May 2017. (Tr. 22.) The ALJ acknowledged Dr. Smiltneek's 2014 opinion that Altaweel's Ehlers-Danlos syndrome resulted in the following, among others: symptoms likely to last twelve months or longer; need for an environment with limited movements and no likelihood of contusion; inability to lift or carry; inability to stand and walk no more than two hours during an eight-hour day; inability to sit more than two hours during an eight-hour day; rarely look down; occasionally turn head right or left, look up, or hold head in static position; never twist, stoop (bend), crouch/squat, climb ladders, or climb stairs; never grasp, turn, twist objects, or reach bilaterally; rarely perform fine finger manipulation bilaterally; symptoms frequently interfere with performance of simple work tasks; not making progress; impairments will produce "bad" days; impairments will cause absences from work three or more times per month; ability to work only two hours per day, five days per week; and severe, continuous pain due to his impairment that is worsened by activities. (Tr. 22–23.) The ALJ also acknowledged that Dr. Smiltneek opined to similar limitations with some changes in lifting capacity, postural activities, manipulation activities, and mental health in March 2015, November 2015, April 2016, October 2016, and May 2017. (Tr. 23.) Finally, the ALJ acknowledged that Dr. Smiltneek wrote a letter explaining that Altaweel was unable to complete eight hours of volunteering per month due to Ehlers-Danlos syndrome and arthritis which causes back, neck, and hip pain and tenderness with activities. (*Id.*)

The ALJ gave all of Dr. Smiltneek's opinions little weight, despite acknowledging his position as Altaweel's treating provider. The ALJ found Dr. Smiltneek's assessments of "extreme limitations" unsupported by the treatment record. (Tr. 23.) This is erroneous. The ALJ supported his conclusion by pointing to records indicating normal muscle strength and tone, normal range of motion, no joint swelling, normal gait and station, and no gross motor deficits on multiple occasions. (*Id.*) But Dr. Smiltneek opined that Altaweel's limitations were caused by pain and tenderness, and his treatment notes reflect just that. He repeatedly assessed Altaweel's range of motion on examination as painful, despite being full. (Tr. 341, 375, 385, 389, 446, 450, 457, 471, 634, 652.) On examination, he also frequently noted tenderness of the right shoulder (Tr. 375, 395, 398, 446, 450, 457, 471, 652) and the right sacroiliac joint (Tr. 375, 450, 446, 457, 471, 652). Treatment notes also abound with indications of subjective complaints of pain. The ALJ's conclusion that Dr. Smiltneek's opinions were unsupported by treatment records is simply incorrect.

The ALJ also gave little weight given to Dr. Smiltneek's opinion because Dr. Smiltneek's treatment remained "generally conservative and the same." (Tr. 23.) This is also error. There is no evidence that more aggressive treatment existed for symptoms of Altaweel's Ehlers-Danlos Syndrome. Furthermore, Dr. Smiltneek's prescribed treatment did *not* stay the same; he attempted a variety of treatments over the course of several years to try to ease Altaweel's uncontrolled pain. In 2014, he recommended a trial of Mobic. (Tr. 327.) The next month he prescribed Prednisone, Flexeril, and physical therapy. (Tr. 399.) The next month, he referred Altaweel to a rheumatologist. (Tr. 395, 418–19.) The rheumatologist recommended gabapentin (Tr. 423) and Dr. Smiltneek followed that with a recommendation of rest (Tr. 385, 390). In 2015, Dr. Smiltneek recommended rest, ice, elevation, compression

bandages, and topical anti-inflammatory cream (Tr. 376, 461, 450, 471); massage (Tr. 446); Lidoderm patches (Tr. 458, 461); and heat (Tr. 458); and discussed the possibility of trigger injections (Tr. 376). In late 2015, Dr. Smiltneek prescribed another round of Prednisone and Flexeril. (Tr. 450.) In April 2016, Dr. Smiltneek discontinued Flexeril and started Baclofen after noting that Altaweel continued to have chronic stabbing back pain that radiated to his legs, and that the combination of Flexeril and Voltaren gel had little effect on the pain. (Tr. 642, 644.) In May, he restarted Flexeril. (Tr. 637.) In 2017, he prescribed EMLA cream, suggested a trial of gabapentin, made a new referral for physical therapy, and prescribed another round of Prednisone. (Tr. 561, 573, 579, 584, 590.) Given that Dr. Smiltneek repeatedly changed Altaweel's medications and treatments and referred him to specialists in response to persistent pain, the ALJ's statement that Dr. Smiltneek's prescribed treatment stayed the same was incorrect, as was discounting Dr. Smiltneek's opinions on that basis.

Because the ALJ erred in giving little weight to the opinions of Dr. Smiltneek, the decision will be reversed and the case remanded for proper consideration of his opinions.

### 2.1.2 Sarah Danahy and Steven Schotten

Because the case is being remanded for proper consideration of Dr. Smiltneek's opinions, I need not extensively discuss the weight given to Altaweel's psychotherapy providers. I note briefly that the ALJ did not err in discounting Danahy's opinion on the basis that she had only met with Altawheel on two occasions and admitted that she had a limited ability to assess his progress, and that the record lacked support for her opinions about episodes of decompensation and other mental health symptoms. (Tr. 23–24.) As a non-treating source, Danahy's opinion was not entitled to controlling weight, and the ALJ adequately explained his reasons for discounting her opinion.

On the other hand, the ALJ almost entirely ignored the mental health report submitted by the therapist who had seen Altawheel weekly for ten months, Schotten (Tr. 494–99.), and did not describe or explain the weight given to that report. On remand, the ALJ must consider all medical opinions in the record and explain the weight given to each one.

### 2.2    Assessment of Other Evidence

Altaweel argues that the ALJ erred in his assessment of evidence from Altaweel's case worker Meghan Thoman, aging and disability resource screener Cynthia Pischke, Altaweel's son Saif Altaweel, and Altaweel himself. (Docket # 15 at 21–32, 24–26.) Because the case is being remanded on other grounds, I will not address each argument in detail, but note that the ALJ discounted the opinions of all of these sources as not supported by or inconsistent with the medical record. (Tr. 21–22, 24–25.) To the extent the ALJ relied on the same reasoning that led him to reject Dr. Smiltneek's opinions, the ALJ's decision was erroneous.

Regarding the ALJ's assessment of Altaweel's subjective complaints, the ALJ's finding that Altaweel's reports of disabling symptoms were not consistent with his treatment records is patently wrong. (Tr. 21.) For example, Altaweel stated in his Adult Function Report that he could lift three or four pounds. (Tr. 210–18.) In explaining his decision to discount Altaweel's subjective complaints, the ALJ explained that "the evidence showed that he retains the functional abilities to perform work at the medium exertional level with environmental and mental limitations," including, among other things, occasional lifting of fifty pounds. (Tr. 21–22.) But the ALJ does not cite to any evidence that Altaweel can lift fifty pounds, and there is none. The only evidence in the record specifically addressing Altaweel's ability to lift are Dr. Smiltneek's various statements that Altaweel is able to lift between zero and ten pounds. (Tr. 425, 433, 438, 489, 533, 551.) Remand is required on this basis.

### 2.3    RFC Determination

Altaweel argues that the ALJ failed to consider all contrary evidence and to support the RFC assessment with evidence from the record. (Docket # 15 at 23–27.) I agree. Most notably, as explained above, the record contains medical opinions and testimony from Altaweel that he cannot lift more than ten pounds, yet the ALJ concluded without explanation that Altaweel can lift fifty pounds. Because the case is being remanded so that Dr. Smiltneek's opinions and Altaweel's reported limitations can be properly assessed, and re-assessment will likely affect the RFC, I need not address this further.

### 2.4.    Hypotheticals to the VE

Finally, Altaweel argues that the ALJ failed to meet his burden at Step 5 to establish that there is work Altaweel can do, primarily because the hypotheticals the ALJ presented to the VE did not account for Altaweel's English illiteracy. (Docket # 15 at 27–30.) In his decision, the ALJ explained that Altaweel is not able to communicate in English, and is therefore considered in the same way as an individual who is illiterate in English under 20 C.F.R. § 416.964. (Tr. 26.) Yet the hypotheticals presented to the VE (Tr. 56–58), on which the ALJ relied in determining that there were jobs Altaweel could perform (Tr. 27), did not contain any limitation for illiteracy.

Because the case is being remanded on other grounds, I need not decide if the ALJ's Step 5 determination was reversible error. However, some clarification is warranted for guidance on remand.

Generally, the ALJ must orient the VE to the totality of a claimant's limitations. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) "[T]he most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them

directly in the hypothetical." *Id.* While a VE will sometimes be assumed to be familiar with a claimant's limitations despite their absence from the hypothetical, this exception does not apply where the ALJ poses a series of increasingly restrictive hypotheticals to the VE, "because in such cases we infer that the VE's attention is focused on the hypotheticals and not on the record." *Id.* (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004)).

Here, the Commissioner suggests that the VE would have known about Altaweel's illiteracy given that he observed the hearing at which Altaweel used an interpreter to communicate. (Docket # 21 at 15.) However, Altaweel's English language skills were never substantively explored as relevant to a work context at the hearing, and there is no evidence that the VE considered Altaweel's literacy level when answering the hypothetical questions. Furthermore, the ALJ posed a series of increasingly restrictive hypotheticals, which weighs against assuming that the VE took Altaweel's lack of English language skills into consideration when answering the hypotheticals.

I am also unconvinced by the Commissioner's argument that, in essence, Altaweel waived any objection on this ground because his counsel could have posed a question with such a limitation to the VE, but did not. (Docket # 21 at 15–16.) At Step 5, it is not the claimant's responsibility to prove that there are no jobs he can perform, but the Commissioner's to prove that there are. *Lauer v. Bowen*, 818 F.2d 636, 638 (7th Cir. 1987).

On remand, the ALJ must ensure that any VE opinion he or she relies upon at Step 5 is based on a hypothetical that includes all of Altaweel's limitations, including his English illiteracy.

# CONCLUSION

The ALJ erred in considering the opinion of Altaweel's treating provider and assessing his subjective complaints, and failed to support the decision with substantial evidence. Accordingly, the Commissioner's decision will be reversed and remanded.

Although Altaweel requests that this court award benefits (Docket # 15 at 30), an award of benefits is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues and this is not a case where the "record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

# ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 17th day of October, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge